# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN E. TARPLEY, #307233 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-13-522 |
| J. MICHAEL STOUFFER, et al. | * | |
| Defendants | * | |
| | *** | |

## **MEMORANDUM OPINION**

Defendants filed a Motion to Dismiss or for Summary Judgment (ECF No. 18) which is unopposed.[1] The Court finds a hearing in this matter unnecessary. See Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Defendants' Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted.

## Background

Plaintiff alleges that on June 7, 2010, he was improperly transferred from a medium security prison in Jessup, Maryland to North Branch Correctional Institution ("NBCI") in Cumberland, Maryland. He states the transfer was retaliation for his letter to Representative Elijah Cummings and that he did not receive a due process hearing prior to transfer. Plaintiff claims that NBCI was designed to house maximum security inmates who "pose a high risk of violence, disruption, and potential for escape" and who "cannot be managed in any other type of correctional facility or lesser security." ECF No. 1 at p. 4. He states that he has never displayed

---

[1] Plaintiff was advised of his right to file a response and of the consequences of failing to do so. See ECF No. 19. Plaintiff filed a Supplemental Complaint which concerns claims unrelated to the matters asserted in this case and shall not be addressed herein. See ECF No. 23.

any behavior that would warrant classifying him as suitable for assignment to NBCI. Additionally, Plaintiff claims he is entitled to notice and an opportunity to be heard prior to being transferred to a super-maximum security facility such as NBCI. Id.

Plaintiff also claims that he is being housed in a "double cell," but that there are no accommodations made for the two inmates in the cell other than an additional bed. He states that inmates are often locked into the cell for 22 hours per day. Plaintiff also alleges the conditions under which he is confined violate the Eighth Amendment. He claims the cells have no way to secure property; no electrical power for a television or fan; no desk; no shelf to hold hygiene items; no hook to hang a towel or coat; and no provisions to hold a second inmate's television or connect it to the cable terminal. He states no other prison in the state fails to provide a means by which to secure personal property. ECF No. 1 at p. 5.

Plaintiff further alleges that he is only permitted two hours a day out of his cell for recreation while in general population, while at other maximum security prisons inmates in general population are permitted five hours per day out of cell for recreation. He describes the indoor recreation room as measuring approximately 500 square feet before deducting the space taken by five steel tables. He states that on most nights there are more than 40 inmates crowded into the room and there is "standing room only." He claims there is seating for only 16 people, all of whom must wait for a turn to use the telephone, microwave, or shower. Plaintiff alleges these accommodations violate both the fire code and the Eighth Amendment. Id.

In his Amended Complaint, Plaintiff alleges he was denied an opportunity to present favorable evidence at an adjustment hearing on April 13, 2011, when his request to introduce a security video into evidence was denied. He states he filed an appeal of the adjustment conviction to the Inmate Grievance Office ("IGO"), but the IGO claimed they never received his

appeal. He alleges that someone else appealed an adjustment conviction that was factually identical to his case and won, but the IGO refused to consider his case. Plaintiff states that case management withheld his paperwork when he asked for copies, and as a result he could not prove he properly appealed the adjustment conviction. ECF No. 6.

Defendants allege that on November 3, 2009, Plaintiff's security status was increased from medium to maximum with a recommendation to transfer him to a disciplinary segregation unit at any maximum security prison. The increase in Plaintiff's security allegedly occurred because of his continued poor adjustment history while confined on segregation. On June 7, 2010, Plaintiff was transferred from Jessup Correctional Institution ("JCI") to NBCI pursuant to the recommendation. ECF No. 18 at Ex. 1, pp. 2 – 3, 19 & 21.

With regard to Plaintiff's claim in the Amended Complaint, Defendants state that Plaintiff was charged with violating Rule 102 (prohibiting the assault or battery on an inmate) when he was observed hitting inmate James Ross with a closed fist while the two men were in the "big yard" outside Housing Unit 4 at NBCI. The hearing for the infraction took place on April 13, 2011, during which Plaintiff alleged he was the victim and not the aggressor during the fight. Additionally, Plaintiff alleged he had experienced problems with Ross prior to the incident in the yard. Officer Smith testified that Ross was not on Plaintiff's enemies list nor had he ever been found guilty of assaulting another inmate. In response to Plaintiff's request to present the security video, Smith testified that NBCI did not have the resources to copy video for disciplinary hearings and that the Warden's policy was not to produce the video for adjustment hearings. Plaintiff's request for the video was denied by Hearing Officer Sandstrom and, based upon the evidence presented at the hearing, Plaintiff was found guilty of violating Rule 102. As

a result, Plaintiff was sentenced to 150 days of segregation; no loss of good conduct credit or other punishment was imposed. ECF No. 18 at Ex. 1, pp. 26 – 31.

Warden Shearin reviewed and affirmed Sandstrom's decision on May 10, 2011. Plaintiff received Shearin's decision on May 17, 2011. Id. at p. 25. In a letter dated November 4, 2011, addressed to Scott Oakley, Executive Director of the IGO, Plaintiff inquired about the status of his appeal of his adjustment conviction on June 1, 2011. Id. at Ex. 2, pp. 31 – 33. On January 9, 2012, Deputy Director Robin Woolford responded to Plaintiff's letter explaining there was no record of any paperwork received from him regarding his adjustment conviction. Id. at pp. 29 – 30. Plaintiff's November 4, 2011 letter was, however, accepted as an appeal of his adjustment conviction and he was told to provide all disciplinary paperwork within 30 days of Woolford's letter. Id.

Plaintiff responded to Woolford's letter in a letter dated January 18, 2012, addressed to Oakley. In it, Plaintiff claimed he had already sent almost all of the paperwork he had relating to his case, but attached a copy of the notice of infraction, appeal to the Warden, an ARP dated April 2, 2011, the hearing record, and the Warden's decision. Id. at pp. 13-27. Subsequently, Woolford advised Plaintiff in a letter dated February 7, 2012, that his IGO case was being administratively dismissed as untimely. Woolford explained that an adjustment appeal to the IGO must be filed within 30 days after receiving the Warden's Hearing Decision Review. Plaintiff's grievance was not received until approximately six months after the date of the Warden's review and good cause for waiver of the time limit had not been shown. Id. at p. 8.

**Standard of Review**

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993)).

**Analysis**

Plaintiff alleges that his transfer to NBCI occurred without adequate procedural protection and was in retaliation for his contact with Congressman Elijah Cummings. In the prison context there are two different types of constitutionally-protected liberty interests which

5

may be created by government action. The first is created when there is a state-created entitlement to an early release from incarceration. See Bd. of Pardons v. Allen, 482 U.S. 369, 381 (1987) (state created liberty interest in parole); Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Thus, before deciding whether Plaintiff is entitled to due process, it must be determined if the conditions under which he was confined constituted an atypical and significant hardship.

The United States Supreme Court found a liberty interest implicated where inmates in Ohio were assigned to the Ohio State Penitentiary ("OSP"), a super-maximum security prison where almost all human contact was prohibited and communication between cells was forbidden. Exercise was limited to one hour a day in a small indoor room, and the inmates were exposed to light 24 hours per day. See Wilkinson v. Austin, 545 U.S. 209, 223 (2005). The court noted that although the conditions alone were not enough to create a liberty interest, when coupled with the indefinite duration of assignment[2] to the prison and the disqualification of an otherwise eligible inmate for parole consideration, the conditions "impose an atypical and significant hardship within the correctional context." Id. at 224.

Applying the Supreme Court's rationale, this court held that a transfer to Maryland Correctional Adjustment Center ("MCAC") implicated procedural due process protections, and found that:

---

[2] The District Court noted that the length of an inmate's stay at the prison was a function of the procedures for review in place. See Austin v. Wilkinson, 189 F.Supp.2d 719, 740 (N.D.Ohio 2002). Inmates assigned to the prison could only progress through the various levels after reclassification reviews which were conducted annually and "even inmates with exemplary behavior rarely progress through OSP in less than two years." Id.

> In light of the prohibition of "almost all human contact," coupled with severe restrictions on movement or any type of activity, both of which may last for the duration of some inmates' underlying sentences, and may be less likely to be relieved by parole than the less arduous conditions at other facilities, the conditions at MCAC create such a hardship when judged against "any plausible baseline." Inmates thus have a protected liberty interest in avoiding transfer to MCAC.

Farmer v. Kavanagh, 494 F.Supp.2d 345, 358 (D. Md. 2007).

The three factors to be balanced to determine how much process is due are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Wilkinson, 545 U.S. at 224-25 (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

Clearly, if a transfer to a higher security prison were done for purposes of retaliating against a prisoner for exercising his constitutional rights, the procedural protections afforded him prior to the transfer become a moot point. A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. See Mount Healthy Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (en banc). A retaliation claim has three elements: 1) the prisoner engaged in protected conduct; 2) an adverse action was taken against the prisoner that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) a causal connection exists between the first two elements, i.e., the prisoner's protected conduct motivated at least in part the adverse action. See Thaddeus-X, 175 F.3d at 394.

The undisputed record in this case establishes that Plaintiff was given a classification review prior to his transfer and a variety of factors were noted and weighed prior to the decision to transfer him to NBCI. The team reviewing his security status noted that Plaintiff's

7

disciplinary record was "horrendous," noting that despite his confinement to disciplinary segregation, he continued to receive infractions. ECF No. 18 at Ex. 1, p. 4. Thus, it is clear that not only did Plaintiff receive adequate protection against erroneous deprivation of his interest in avoiding transfer to a more restrictive prison, it is also clear the transfer was in no way related to his correspondence with Congressman Cummings. Given the governmental interest in attempting to reduce violence in prisons, the procedural protections afforded satisfy any due process guarantees presented. Defendants are entitled to summary judgment on this claim.

Plaintiff also claims he was denied due process in the context of a disciplinary adjustment hearing. In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits he is entitled to certain due process protections.[3] See Wolff v. McDonnell, 418 U.S. 539 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. Wolff, 418 U.S. at 564-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985). The mere fact that a DOC rule governing adjustment hearings was violated does not necessarily amount to a due process violation. See Riccio v. Cnty. of Fairfax, 907 F.2d 1459, 1456 (4th Cir. 1990) ("a state does not necessarily violate the constitution every time it violates one of its rules."); Ewell v. Murray, 813 F.Supp. 1180, 1183 (W.D.Va. 1995) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due.").

Plaintiff was observed hitting another inmate with closed fists. His assertions that he had issues with the other inmate prior to the assault were rejected in light of the fact the inmate was not on his enemies list. Plaintiff's claim that he was assaulted was rejected in light of the fact

---

[3] The Court notes that Plaintiff did not lose any good conduct credits as a result of the infraction at issue.

that his alleged aggressor had no history of assaulting other inmates and exhibited evidence of being beaten. Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. See Kelly v. Cooper, 502 F.Supp. 1371, 1376 (E.D.Va. 1980). The findings will only be disturbed when unsupported by any evidence, or when wholly arbitrary and capricious. See Hill, 472 U.S. at 456; see also Baker v. Lyles, 904 F.2d 925, 933 (4th Cir. 1990). As long as there is some evidence in the record to support a disciplinary committee's factual findings, a federal court will not review their accuracy. The credibility determinations made by the hearing officer constitutes "some evidence" to support Plaintiff's adjustment conviction. Plaintiff's claim that he was improperly denied an opportunity to introduce video surveillance is without merit in light of the evidence relied upon to support his guilt.

Plaintiff's claim against Oakley appears to be an access-to-courts claim inasmuch as he alleges that Oakley improperly failed to forward his grievance to the Office of Administrative Hearings for consideration on its merits, depriving him of an opportunity to challenge the adjustment conviction.[4] Plaintiff's appeal to the IGO of his adjustment conviction was a mandatory first step before presenting his claim to any court with jurisdiction to consider the matter.

Prisoners have a constitutionally protected right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 821 (1977). However:

> Bounds does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in

---

[4] Defendants characterize this claim as an equal protection claim. ECF No. 18 at Mem., p. 15. Although Plaintiff alleged there was a case factually identical to his which had been overturned, this Court views that assertion as impacting upon the reasonableness of the IGO's decision not to allow his case to go forward. To the extent that the claim was intended to be an equal protection claim, however, the claim fails. To prevail under the Equal Protection Clause, Plaintiff "must prove the decision makers in his case acted with discriminatory purpose." McCleskey v. Kemp, 481 U.S. 279, 292 (1987). Plaintiff's grievance was dismissed as untimely. There is no evidence of a discriminatory purpose for that decision.

9

> order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

Lewis v. Casey, 518 U.S. 343, 355 (1996).

"Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" O'Dell v. Netherland, 112 F.3d 773, 776 (4th Cir. 1997) (quoting Lewis, 518 U.S. at 355). "The requirement that an inmate alleging a violation of Bounds must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." Lewis, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "non-frivolous" and "arguable" claim was lost because of the denial of access to the courts. Id. at 350-52.

Plaintiff's assertion that he was entitled to reversal of his adjustment conviction due to the fact that, in another case, an adjustment conviction was reversed and remanded for another inmate is frivolous. ECF No. 18 at Ex. 2, pp. 55 – 56. Plaintiff claims that another inmate, Jean Germain, complained he was denied the security video at his adjustment hearing and his conviction for the rule violation was reversed, entitling Plaintiff to the same relief. Id. at p. 56. Plaintiff notes no other similarity between his adjustment proceeding and Germain's. The evidence relied upon to support Plaintiff's guilt, however, vitiated any possible persuasiveness the security video might have had in the context of his hearing. Thus, he presented no basis for the IGO to overlook the untimely filing of the grievance. Additionally, there is no evidence submitted by Plaintiff to support the bald assertion that a timely filed grievance was intentionally

misdirected or ignored. Defendant Oakley is entitled to summary judgment in his favor on the access to courts claim as Plaintiff has failed to establish an actual injury to his ability to litigate a meritorious claim.

Generously construed, Plaintiff's Complaint raises an Eighth Amendment claim regarding the conditions of confinement at NBCI. Conditions which "deprive inmates of the minimal civilized measure of life's necessities" may amount to cruel and unusual punishment. Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Conditions which are merely restrictive or even harsh, however, "are part of the penalty that criminal offenders pay for their offenses against society." Id.

> In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements - that 'the deprivation of [a] basic human need was _objectively_ sufficiently serious,' and that '_subjectively_ the officials acted with a sufficiently culpable state of mind.'

Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called "punishment," and absent severity, such punishment cannot be called "cruel and unusual." Iko v. Shreve, 535 F.3d 225, 238 (4th Cir. 2008) (citing Wilson v. Seiter, 501 U.S. 294, 298-300 (1991)).

To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. See Wilson, 501 U.S. at 298. In other words, "the test is whether the guards know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." Brown v. N. C. Dep't of Corr., 612 F.3d 720, 723 (4th Cir. 2010) (quoting Case v. Ahitow, 301 F.3d 605, 607 (7th Cir. 2002)). Conduct is not actionable under the Eighth Amendment unless it transgresses

bright lines of clearly-established pre-existing law. See Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992).

The objective prong of a conditions claim requires proof of an injury. "[T]o withstand summary judgment on an Eighth Amendment challenge to prison conditions a plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993). "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003). Demonstration of an extreme deprivation proscribed by the Eighth Amendment requires proof of a serious or significant physical or emotional injury resulting from the challenged conditions. See Odom v. S. C. Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

Plaintiff has failed to allege or provide evidence that he suffered significant physical or emotional injury as a result of the conditions at NBCI. Rather, the claims he asserts either concern inconveniences such as the lack of a cable jack for a second television in the cell, or concern conditions that may pose a potential for danger, such as overcrowded day rooms, but have not caused harm. None of the claims asserted amount to a deprivation of minimal life necessities. Defendants are entitled to summary judgment on the conditions claim.

Having found no evidence that Plaintiff's constitutional rights have been abridged by the facts as stated in the Complaint as amended, the Defendants' Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted. A separate Order follows.

February 21, 2014                                          /s/
                                                   _____
                                                   George L. Russell, III
                                                   United States District Judge